HAUSLOHNER v REGENTS OF THE UNIVERSITY OF MICHIGAN

Docket No. 77-3544. Submitted June 14, 1978, at Lansing.—Decided September 19, 1978.

Peter Hauslohner brought an action against the Regents of the University of Michigan seeking to be declared a bona fide resident of Michigan for tuition purposes and for a refund of the difference between the tuition the plaintiff has paid as a nonresident student and what he would have paid if he had properly been classified as a resident by the defendants. Washtenaw Circuit Court, Patrick J. Conlin, J., entered judgment for defendants. Plaintiff appeals. The only issue is whether plaintiff sustained his burden of proving resident status in the state so that he could take advantage of preferential tuition rates. *Held:*

Residency for purposes of preferential university student tuition rates must be established by clear and convincing proof. A student has failed to meet this required burden where the evidence shows that he came into the state solely to pursue his graduate education, his primary source of income remained out-of-state and he has shown no intention of establishing a permanent home in the state.

Affirmed.

1. COLLEGES AND UNIVERSITIES—TUITION—RESIDENTS AND NONRESIDENTS—RESIDENCY REGULATIONS—PREFERENTIAL TUITION RATES.

A state has a legitimate interest in protecting and preserving the quality of its colleges and universities and the right of its own bona fide residents to attend such institutions on a preferential tuition basis; the state can establish such reasonable criteria for in-state status as to make virtually certain that students who are not, in fact, bona fide residents of the state, but who

REFERENCES FOR POINTS IN HEADNOTES

[1–4, 6] 15A Am Jur 2d, Colleges and Universities §§ 19, 21.

Validity and application of provisions governing determination of residency for purpose of fixing fee differential for out-of-state students in public college. 56 ALR3d 641.

[5] 5 Am Jur 2d, Appeal and Error §§ 839–845.

have come here solely for educational purposes, cannot take advantage of the in-state rates.

2. COLLEGES AND UNIVERSITIES—TUITION—RESIDENCY REQUIREMENTS.
   A state university may validly impose a one year residence requirement upon students seeking resident status for tuition purposes.

3. COLLEGES AND UNIVERSITIES—TUITION—RESIDENTS AND NONRESIDENTS—PRESUMPTIONS.
   A state university may rely upon a rebuttable presumption that out-of-state students remain nonresidents in determining resident status for tuition purposes.

4. COLLEGES AND UNIVERSITIES—STUDENTS—RESIDENT STATUS.
   The domicile of a university student is a question of fact.

5. APPEAL AND ERROR—FINDINGS OF FACT—CLEARLY ERRONEOUS RULE.
   A Trial court's determination of fact will not be set aside unless the Court of Appeals is left with a definite and firm conviction that error has been committed.

6. COLLEGES AND UNIVERSITIES—TUITION—RESIDENTS AND NONRESIDENTS—PREFERENTIAL TUITION RATES.
   Residency for purposes of preferential university student tuition rates must be established by clear and convincing proof.

*Arthur E. Carpenter,* for plaintiff.

*Roderick K. Daane,* General Counsel for the University of Michigan, for defendant.

Before: D. E. HOLBROOK, P. J., and M. J. KELLY and P. J. MARUTIAK,* JJ.

D. E. HOLBROOK, P. J. In this case, the plaintiff challenges the University of Michigan's refusal to grant him resident status for tuition purposes. The trial court, sitting without a jury, upheld the university's decision.

Plaintiff moved to Ann Arbor, Michigan, on

---

* Circuit judge, sitting on the Court of Appeals by assignment.

September 1, 1974, intending to enroll as a graduate student at the University of Michigan. He worked part time for a faculty member of the university until the winter term, 1975, and then enrolled in classes.

Plaintiff's family home was in Pennsylvania, however, he had not resided there for several years. He attended college for four years in California, from 1969 to 1973, paying nonresident tuition. In the following months he lived, successively, in New Jersey, Ohio, Canada, California again, and Idaho.

In 1955, while plaintiff was a minor, his grandfather established a trust fund for his benefit in Pennsylvania. Upon reaching the age of 21 years in 1973, plaintiff used the rest of this trust to create a new trust, also in Pennsylvania. During the period when plaintiff was attending school in Michigan, the trust fund contributed approximately $10,000 per year to his support. He earned, through part time employment intended as a form of financial aid to students, approximately $600 to $800 in 1974, $150 to $200 in 1975, and $1100 to $1200 in 1976.

Plaintiff apparently brought all of his personal effects to his rented apartment in Michigan. He registered to vote in Michigan and transferred the registration of his automobile. Plaintiff, in correspondence with his banker, expressed his desire to "establish legal residency" in Michigan. He owns no real property in Michigan, has not been admitted to practice any profession, and has no military commitments in this state. He has no permanent employment in Michigan, and has not served on jury duty or become a member of any church. He filed a Michigan income tax return in 1975, receiving a refund of $7, with no tax liability.

Plaintiff applied for resident tuition status at the University of Michigan in September of 1975. Due to a six-week stay in California during July and August of 1975, he failed to satisfy the university's one-year residency requirement and his application was denied. His appeal to the university residency appeals committee was also denied. He brought the instant action in Washtenaw County Circuit Court to challenge this denial of resident status. On August 26, 1977, the trial court, sitting without a jury, entered judgment for the defendant university and plaintiff appeals.

In *Vlandis v Kline,* 412 US 441; 93 S Ct 2230; 37 L Ed 2d 63 (1973), the United States Supreme Court struck down the University of Connecticut's conclusive presumption that all students who apply for admission from an out-of-state address are, and remain, nonresidents for tuition purposes. At the same time, the majority, noting its summary decision in *Starns v Malkerson,* 401 US 985; 91 S Ct 1231; 28 L Ed 2d 527 (1971),[1] upheld a state university's right to utilize a one-year durational residency requirement in determining resident status. Stated the Court at 412 US 452–453, 453–454:

"We fully recognize that a State has a legitimate interest in protecting and preserving the quality of its colleges and universities and the right of its own bona fide residents to attend such institutions on a preferential tuition basis.

\* \* \*

"The State can establish such reasonable criteria for in-state status as to make virtually certain that students who are not, in fact, bona fide residents of the State, but who have come there solely for educational purposes, cannot take advantage of the in-state rates."

[1] Lower court decision: 326 F Supp 234 (D Minn, 1970).

See *Hooban v Boling,* 503 F2d 648 (CA 6, 1974), *Hayes v Board of Regents of Kentucky State University,* 495 F2d 1326 (CA 6, 1974), *Kelm v Carlson,* 473 F2d 1267 (CA 6, 1973), *Hayes v Regents of the University of Michigan,* 53 Mich App 605; 220 NW2d 91 (1974), *rev'd,* 393 Mich 756 (1974), *reh den* 394 Mich 903 (1974).[2]

*Hooban, Hayes,* and *Kelm, supra,* the cases which have followed *Vlandis, supra,* make it clear that a state university may validly impose a one-year residence requirement upon students seeking resident status, and may rely upon a *rebuttable* presumption that out-of-state students remain non-residents. The only issue in the case at bar is whether the plaintiff sustained the burden of proving his claimed newly-acquired resident status. The plaintiff's domicile is a question of fact under these circumstances. *Hartzler v Radeka,* 265 Mich 451, 452; 251 NW 554 (1933). Under GCR 1963, 517.1, the trial court's determinations of fact will not be set aside unless this Court is left with a "definite and firm conviction" of error. *Tuttle v Dep't of State Highways,* 397 Mich 44; 243 NW2d 244 (1976), *Barnett v International Tennis Corp,* 80 Mich App 396; 263 NW2d 908 (1978).

The provisions of the defendant university's rules for determining resident tuition classification are as follows:

"1. Since normally a student comes to The University of Michigan for the primary or sole purpose of attending the University rather than to establish a domicile in Michigan, one who enrolls in the University as a non-resident shall continue to be so classified through-

[2] *See also, Montgomery v Douglas,* 388 F Supp 1139 (D Colo, 1974), *aff'd* 422 US 1030; 95 S Ct 2645; 45 L Ed 2d 687 (1975), *Sturgis v State of Washington,* 368 F Supp 38 (WD Wash, 1973), *aff'd* 414 US 1057; 94 S Ct 563; 38 L Ed 2d 464 (1973), *Weaver v Kelton,* 357 F Supp 1106 (ED Tex, 1973).

out his attendance as a student, unless and until he demonstrates that his previous domicile has been abandoned and a Michigan domicile established.

"2. No student shall be eligible for classification as a resident unless he shall be domiciled in Michigan and has resided in Michigan continuously for not less than one year immediately preceding the first day of classes of the term for which classification is sought.

"3. For purposes of these regulations, a resident student is defined as a student domiciled in the State of Michigan. A non-resident is defined as one whose domicile is elsewhere. A student shall not be considered domiciled in Michigan unless he is in continuous physical residence in this state and intends to make Michigan his permanent home, not only while in attendance at the University, but indefinitely thereafter as well, and has no domicile or intent to be domiciled elsewhere.

"4. The following facts and circumstances, although not necessarily conclusive, have probative value in support of a claim for residence classification:

"a. Continuous residence in Michigan during periods when not enrolled as a student.

"b. Reliance upon Michigan sources for financial support.

"c. Domicile in Michigan of family, guardian or other relatives or persons legally responsible for the student.

"d. Former domicile in the state and maintenance of significant connections therein while absent.

"e. Ownership of a home in Michigan.

"f. Admission to a licensed practicing profession in Michigan.

"g. Long term military commitments in Michigan.

"h. Commitments to further education in Michigan indicating an intent to stay here permanently.

"i. Acceptance of an offer of permanent employment in Michigan.

"Other factors indicating an intent to make Michigan the student's domicile will be considered by the University in classifying a student.

"5. The following circumstances, standing alone, shall

not constitute sufficient evidence of domicile to effect classification of a student as a resident under these regulations:

"a. Voting or registration for voting.

"b. Employment in any position normally filled by a student.

"c. The lease of living quarters.

"d. A statement of intention to acquire a domicile in Michigan.

"e. Domicile in Michigan of student's spouse.

"f. Automobile registration.

"g. Other public records, e.g., birth and marriage records."

The trial court, in applying these rules to the circumstances of the instant case, determined that plaintiff came to Michigan solely to pursue his graduate education. The court found especially relevant to this determination the following factors: the plaintiff's primary source of income remained out-of-state; the plaintiff did not intend to establish a "permanent home" in Michigan;[3] the facts relied upon by the plaintiff to establish residency did not meet the "clear and convincing proof" standard which the state may require under the line of Federal cases cited above.

We do not find the trial court's determination of lack of domiciliary intent to have been clearly erroneous, and therefore we need not consider whether or not the plaintiff complied with the additional one-year residency requirement.

Affirmed. No costs a public question being involved.

---

[3] Plaintiff expected to remain "highly mobile". At the time of trial he was residing in Washington, D.C., participating in a summer internship. At that time he stated:

"I think he's asking me about my intentions to return to Ann Arbor in the fall, and I think, to be completely honest, I think I should say that the probability is that I will not return to Ann Arbor in the fall."