William H. MICHELSON, Plaintiff,

Bradley Osmundson, Intervenor,

v.

Walter A. COX, Dean and Registrar of the University of Iowa, and Stanley Barber, S. J. Brownlee, Harry Slife, John D. Baldridge, Mrs. R. M. Collison, Steven E. Zumbach, Ray V. Bailey, Mrs. H. Rand Peterson, Donald H. Shaw, the Iowa State Board of Regents in their capacity as the Iowa State Board of Regents, Defendants.

Civ. No. 77–27–D.

United States District Court, S. D. Iowa, Davenport Division.

Sept. 17, 1979.

William H. Michelson and Bradley J. Osmundson, pro se.

Arthur O. Leff, Iowa City, Iowa, Thomas J. Miller, Atty. Gen. of Iowa, Howard O. Hagen, Asst. Atty. Gen. of Iowa, Des Moines, Iowa, for defendants.

## MEMORANDUM OPINION AND ORDER

STUART, Chief Judge.

Plaintiffs brought this civil rights action alleging that their constitutional rights were violated when they were required to pay nonresident, rather than resident tuition at the University of Iowa. Plaintiffs also claim that the Registrar and the Nonresident Fee Review Committee acted arbitrarily and capriciously in denying them resident status.

## I. MICHELSON

Mr. Michelson was born on November 20, 1953, in Elmhurst, New York, and was raised in New Jersey. After his graduation from high school in Englewood, New Jersey, in June of 1971, he attended Rutgers University in New Brunswick, New Jersey, as a New Jersey resident. Prior to receiving his A.B. degree from Rutgers in May of 1975, plaintiff applied to at least five universities, including the University of Iowa, for admission to a combined course of study leading to J.D. and M.A. degrees. The Department of Urban and Regional Planning of the University of Iowa accepted him and offered him a part-time (quarter-time) position as a teaching assistant. Plaintiff visited Iowa City and was favorably impressed. The University of Iowa College of Law subsequently accepted him, and he began his joint studies at the University in the fall of 1975.

Upon entering the University, plaintiff was classified as a nonresident student for tuition purposes. Nonresidents are normally charged a different and greater rate of tuition than students classified as Iowa residents. Although plaintiff was classified as a nonresident, he was charged the lower resident rate while he was employed as a teaching assistant.

In the fall semester of 1976, plaintiff apparently realized that he might not be employed as a teaching assistant during the next school year and he spoke with Harold Duerksen, Associate Registrar of the University, about the procedure for obtaining a change in his classification. Mr. Duerksen explained that it was his job initially to determine whether a student should be reclassified as a resident; that if he had any doubt about a student's status as a resident, he would not reclassify the student and would leave the matter up to the Nonresident Fee Review Committee on appeal; and that the Review Committee's decision could be appealed to the Iowa State Board of Regents. On September 22, 1976 plaintiff filed a formal written Application for Resident Classification effective May 20, 1977.

By letter dated September 24, 1976, Mr. Duerksen informed plaintiff that he did not then qualify for resident status under the regulations of the Board of Regents. The letter set forth the gist of the regulations upon which Mr. Duerksen relied and again advised plaintiff of his right to appeal to the Review Committee.

Plaintiff subsequently appealed Mr. Duerksen's decision to the Review Committee. He filed a written statement and appeared at an oral hearing before that body on October 13, 1976. The Review Committee which heard plaintiff's case consisted of Jeanne Osborn, Chairperson and faculty member; defendant Walter A. Cox, Dean and Registrar of the University; Leonard Brcka, University Controller and Secretary; Sheldon Kurtz, a law professor at the University; and another faculty member whose name is unknown. Plaintiff argues that he was entitled to classification as a resident because he intended to stay in Iowa permanently and because he had taken the following actions at least one year prior to May 20, 1977:

1. He had registered to vote in Johnson County, Iowa.

2. He had obtained an Iowa driver's license and surrendered his New Jersey license.

3. He had registered his automobile in Johnson County.

4. He had paid and was paying local property taxes through rental payments on apartments that he had rented in Coralville, Iowa.

5. He had paid Iowa income taxes since he began working for the University in August of 1976.[1]

6. He is legally an adult, and his parents do not support him or claim him as a dependent for tax purposes.

7. He had registered his intention to take the Iowa bar examination as a freshman and had joined a legal fraternity.

8. He had maintained his sole bank accounts with a Coralville bank or banks.

9. He had lived at his permanent address in Coralville.

10. He had been and was then employed by the University as a teaching assistant.

At the conclusion of the hearing, the Review Committee retired to deliberate outside plaintiff's presence.

By letter dated October 14, 1976, Review Committee Chairperson Osborn informed plaintiff that the Committee had denied his application for resident classification because his arguments were "according to the criteria established by the Iowa Board of Regents, insufficient to uphold [his] appeal". Plaintiff also received a letter from Mr. Duerksen offering to discuss the denial with him. Plaintiff elected not to appeal the Review Committee's decision to the Board of Regents.

Plaintiff was not employed as a teaching assistant for the fall semester of 1977, and he was required to pay nonresident tuition for that semester. On April 7, 1977, plaintiff filed the instant lawsuit under 42 U.S.C. § 1983 against Walter Cox, the Dean and Registrar of the University of Iowa, as well as the members of the Board of Regents in their official capacity.

The theories upon which plaintiff tried this action are not totally consistent with those asserted in his pleadings. The claims upon which he tried the case appear to be as follows. First and foremost, plaintiff claims that the denial of his application for resident classification was arbitrary and capricious and violated his rights under the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution. Second, plaintiff claims that the Review Committee's refusal to permit him to be present during its deliberations on his application denied him procedural due process of law as a constitutional matter because he had a right to be present during the deliberations under the

---

1. Plaintiff's Iowa State Income Tax Returns for 1976 and 1977 show that no tax was due for either year and that refunds of all taxes withheld amounted to $0.28 in 1976 and $1.28 in 1977.

Iowa Open Meetings Law, Ch. 28A, Iowa Code (1975). Finally, he claims that the Review Committee failed to render detailed findings of fact in accordance with Iowa Code § 17A.12(6) (1975) and thereby violated his constitutionally-protected procedural due process rights. He seeks declaratory, injunctive and monetary relief on his own behalf and injunctive relief on behalf of all other similarly situated persons.[2]

Plaintiff's first claim is that the denial of his application for resident classification by the Review Committee denied him his rights to due process and equal protection. The pertinent rules of the Board of Regents provide as follows:

A student 18 years of age or over and [a] married student under 18 years of age shall be classified as a resident if (1) the student's parents were residents of the state at the time such student reached majority or was married and the student is not domiciled in another state or (2) . . . after marriage or reaching majority [, the student] has established a bona fide residence in the state for at least 12 consecutive months immediately preceding the beginning of the semester. Bona fide residence in Iowa means that the student is not in the state primarily to attend a college; that he is in the state for purposes other than to attempt to qualify for resident status.

. . . . .

Ownership of property in Iowa, or the payment of Iowa taxes, does not in itself establish residence.

. . . . .

A student from another state who has enrolled for a full program, or substantially a full program, in any type of educational institution will be presumed to be in Iowa primarily for educational purposes, and will be considered not to have established residence in Iowa. Continued

residence in Iowa during vacation periods . . . does not of itself overcome the presumption.

Plaintiff does not contend that a state may not charge nonresident students a higher rate of tuition than resident students. In *Vlandis v. Kline*, 412 U.S. 441, 452–53, 93 S.Ct. 2230, 2237, 37 L.Ed.2d 63 (1973), the Supreme Court recognized that a state "[h]as a legitimate interest in protecting and preserving the quality of its colleges and universities and the right of its own bona fide residents to attend such institutions on a preferential tuition basis". Plaintiff also does not argue that a state may not employ a one-year durational residency requirement as a prerequisite to a student's receipt of resident tuition benefits. In *Starns v. Malkerson*, 326 F.Supp. 234 (D.Minn.1970), aff'd, 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971), the Supreme Court upheld a regulation allowing only students who had been bona fide residents of Minnesota for at least one year to attend the University of Minnesota at the lower resident tuition rate. Finally, plaintiff does not assert that the above-quoted regulations on their face create an irrebuttable presumption that students from a state other than Iowa who are attending the University of Iowa are not and can never become Iowa residents for tuition purposes. In *Clarke v. Redeker*, 259 F.Supp. 117, 122–23 (S.D.Iowa 1966), a three-judge court held that virtually identical regulations established merely a rebuttable presumption of nonresidency.

What plaintiff appears to argue is that the presumption that he is in Iowa for educational purposes and is not a bona fide Iowa resident is overcome as a matter of law if he (1) has lived in Iowa for one year, (2) says that he intends to remain in Iowa and considers Iowa his domicile, and (3) performs the objective acts listed on his statement to the Review Committee. In

---

**2.** The monetary relief that plaintiff seeks is a refund of $517 which represents the difference between the nonresident tuition he paid and the resident tuition for the fall semester of 1977. In view of the disposition of plaintiff's claims on the merits, the Court need not decide wheth-

er the Eleventh Amendment would bar such an award, see *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), or whether Iowa has waived its immunity. See Iowa Code § 25A.22 (1979).

plaintiff's view, to apply the regulations so as to reach a contrary result is arbitrary, capricious and unreasonable, and creates an irrebuttable presumption of nonresidency in practice and effect.

Since the Review Committee was never presented with any evidence inconsistent with plaintiff's claim of residence, defendants' position appears to be that the presumption of nonresidency is strong enough to overcome the evidence that plaintiff presented to the Review Committee.

■ The Court is of the opinion that the Review Committee's decision was not arbitrary, capricious or irrational. The difficulty in a case of this nature is that the Review Committee is called upon to make a decision as to a student's subjective intent. As Professor Kurtz noted in his testimony, all of the evidence that plaintiff presented to the Review Committee could be presented by any out-of-state student who wanted to be classified as a resident but had no intent to make Iowa his permanent home. To accept plaintiff's argument would require the University to reclassify as a resident every student who, after attending the University for a year, makes a self-serving declaration that he intends to reside in Iowa permanently and performs a series of "objective" acts, some of which are required by law and all of which are customarily done by some nonresident students who do not intend to remain in Iowa after graduation. This would, in effect, create a presumption that any such student *is* a bona fide Iowa resident, thus seriously jeopardizing the University's nonresident tuition program and consequently its entire financial structure. It would remove the tuition decision from the hands of the University and place it in the student's.

■ The Court cannot agree with plaintiff's contention that the rules of the Board of Regents operate in the manner of an irrebuttable presumption in practice. The fact that during 1975 to 1979, 23 of the 106 appeals considered by the Review Committee and 2 of the 8 appeals considered by the Board of Regents resulted in the reclassification of nonresident students as residents

tends to indicate that the presumption on nonresidence is rebuttable in its actual operation. Furthermore, the evidence at trial showed that out-of-state students were reclassified as residents in certain cases, depending on the particular facts, e. g., where the student engaged in substantial outside employment while attending school, married an Iowa resident so employed, or secured a job in Iowa to commence upon his graduation. In one case, an out-of-state student was reclassified when he produced a newspaper clipping that predated his application for admission and indicated that he said he wanted to return to his former home town in Iowa.

It is true that students who do intend to make Iowa their home may not be able to overcome the presumption of nonresidence, but it does not appear possible to draft a regulation that would preserve an effective nonresident tuition scheme without injustice to some individuals. Rules that apply to all are rarely, if ever, without anomalies. "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (citation omitted).

■ It is clear that the Board of Regents has the authority to "[e]stablish such reasonable criteria for in-state status as to make virtually certain that students who are not, in fact, bona fide residents of the State, but who have come there solely for educational purposes, cannot take advantage of the in-state rates". *Vlandis*, supra, 412 U.S. at 453–54, 93 S.Ct. at 2237. The Board of Regents has not adopted affirmative criteria but has created a Review Committee that is charged with the duty of determining whether students are bona fide residents. It has also adopted a truly rebuttable presumption of nonresidency for

students who have come to Iowa to attend school. The Board of Regents could not be "virtually certain" that only bona fide Iowa residents are receiving the benefits of in-state tuition if it were required to grant resident status to all students from out-of-state who did no more than could be and frequently is done by students who have no intention of making Iowa their permanent residence.

Plaintiff's second and third claims can be treated jointly and rather summarily. He claims that the Review Committee's refusal to permit him to be present during its deliberations and its failure to render detailed findings of fact denied him procedural due process of law. He contends that the former Iowa Open Meetings Law, Ch. 28A, Iowa Code (1975), and the Iowa Administrative Procedure Act, Ch. 17A, Iowa Code (1975), particularly § 17A.12(6), set forth the process due him as a federal constitutional matter. In other words, he argues that a violation of his procedural rights under state law is necessarily a violation of his Fourteenth Amendment procedural due process rights. He does not seek recovery for violations of state law per se or invoke the principles of pendent jurisdiction. He does not claim that the statutes cited create any liberty or property interest within the ambit of the due process clause. See *Wolff v. McDonnell*, 418 U.S. 539, 557–58, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

█ Assuming arguendo that the Review Committee did violate plaintiff's procedural rights under state law, it does not follow that plaintiff's federal constitutional rights were violated. In *Vruno v. Schwarzwalder*, 600 F.2d 124, 130–31 (8th Cir. 1979), the Eighth Circuit relied on *Slotnick v. Staviskey*, 560 F.2d 31, 34 (1st Cir. 1977), for the proposition that:

The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension. See *Screws v. United States*, 325 U.S. 91, 108, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) (opinion of Douglas, J.); *Street v. Surdyka*, 492 F.2d 368, 371 (4th Cir. 1974). Cf. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

600 F.2d at 130–31. That language is equally applicable here.

Furthermore, in *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the Supreme Court stated that:

[O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. (Citation omitted)

424 U.S. at 334–35, 96 S.Ct. at 903. Applying this analysis to the case at bar, the Court is convinced that plaintiff's second and third claims must be rejected.

█ First, the property interest that plaintiff or any University of Iowa student has in the difference between the resident and nonresident tuition rate is slight both in an absolute monetary sense and relative to the other types of rights protected by the Constitution.

Second, to require the procedural safeguards suggested by plaintiff would do little to reduce the risk of an erroneous deprivation of a student's rights. Within the administrative process, the student seeking reclassification is provided three opportunities to obtain reclassification during each semester or session that he is enrolled. He is also given a meaningful opportunity to be heard at each step in the process. Under these circumstances, the student's presence during the Review Committee's deliberations would be of marginal utility. It is true that detailed written findings of fact might facilitate review of the Committee's

decision by the Board of Regents and the courts. However, the need for such findings is undercut by the fact that there is generally little or no factual dispute concerning applications for reclassification. There was no substantial factual dispute in plaintiff's case. The committee gave him a constitutionally adequate statement of the reasons for its decision which was judicial, not administrative in nature.

Finally, the preparation of detailed findings of fact in every case would entail considerable administrative expense and delay; and the presence of the student during deliberations might tend to inhibit the free flow of discussion among Committee members, especially where, as here, the applicant and a Committee member also have a student-teacher relationship.

## II. OSMUNDSON

During the course of this litigation it appeared to Mr. Michelson that he might graduate before this case came on for trial. In order to avoid any possible mootness issue, he placed a notice on a bulletin board at the University of Iowa Law School seeking a similarly situated student to join in the case. Mr. Osmundson responded, and on March 23, 1979 he was permitted to join in the lawsuit as a party plaintiff.[3]

On February 1, 1977, while attending St. Olaf College in Minnesota, Mr. Osmundson applied for admission to the University of Iowa College of Law. In his application he stated that he considered himself to be an Iowa resident but had not resided in Iowa for other than educational purposes for 12 consecutive months. He was classified as a nonresident, came to the University of Iowa, and paid nonresident tuition for the 1977–78 school year.

During the fall of 1977, Mr. Osmundson spoke with Mr. Duerksen about a change in his classification. He apparently told Mr. Duerksen that he had reached the age of majority; that he was not supported by his parents, who lived in Rock Island, Illinois; that he had lived in Clear Lake, Iowa, and worked in Mason City, Iowa, during every summer from 1974 to 1977, inclusive; and that he considered himself to be an Iowa resident. Mr. Duerksen gave Mr. Osmundson substantially the same information he had given Mr. Michelson but told him that he didn't have a very good chance of obtaining classification.

Mr. Osmundson claims that he subsequently filed an Application for Resident Classification and that the application was denied. No record of any such application or any action taken thereon was found in the Registrar's Office where such records are normally kept. Mr. Osmundson stated that he did not keep a copy of his application and could not find the letter rejecting it. Mr. Osmundson did not appeal the denial of his application to the Review Committee, although Mr. Duerksen had informed him that if he ever had any doubt as to whether a student should be reclassified he would deny the application and leave the matter up to the Review Committee.

On May 25, 1978, Mr. Osmundson applied for admission to the graduate school at the University in order to obtain both a J.D. and an M.B.A. degree. He stated on the application form that he did not consider himself to be an Iowa resident. He was admitted to the graduate college and paid nonresident tuition for the 1978–79 school year, including the 1979 summer session in which he enrolled for four hours of classwork. Mr. Osmundson took no other action to obtain a resident classification until he joined in this lawsuit. He claims that the Board of Regents' regulations were unconstitutionally applied to him and seeks a refund of the nonresident tuition differential that he paid for the 1978–79 school year and the 1979 summer session. He also asks that his case be remanded to the Review Committee.

If Mr. Osmundson's version of the facts were accepted as true, his situation would

---

3. Mr. Osmundson is designated in the pleadings as an intervenor. However, he has asserted a claim for relief and has been regarded by the parties and the Court as a plaintiff. The Court finds no prejudice to defendants in treating Mr. Osmundson as a plaintiff but will refer to him by name for simplicity.

present a much closer constitutional issue than Mr. Michelson's. Although it is questionable whether Mr. Osmundson sustained his burden of proving that he made formal application for resident classification that was denied by Mr. Duerksen, the Court need not decide either those issues or whether the rules established by the Board of Regents were unconstitutionally applied to him.

In substance, Mr. Duerksen informed Mr. Osmundson, as he informs all applicants for reclassification, that if it was not clear to him that an application should be granted, he would deny the application and allow the Review Committee to make the decision. It is Mr. Duerksen's policy to inform applicants that the Review Committee is the proper arbiter of a disputed case, and very little is required of the student who wishes to present his case to the Review Committee. If a student expresses a desire to appeal Mr. Duerksen prepares the materials for the Committee's review; if a student indicates a wish to be heard orally by the Committee, Mr. Duerksen makes the necessary arrangements.

Although Mr. Osmundson was aware of the roles which Mr. Duerksen and the Review Committee play in the decision-making process, he failed to appeal to the Review Committee. In so doing, he effectively deprived the University officials of an opportunity to exercise their judgment and discretion. Mr. Osmundson is not required to exhaust his state administrative remedies as a prerequisite to filing suit under section 1983. *Clarke,* supra, at 120. However, he is required to proceed far enough in the administrative process that it can be said that unfavorable official action has been taken and that there is a case or controversy between him and the defendant University officials.

It is not the function of this Court, as a Court of the United States, to become embroiled in the day-to-day administration of the University of Iowa's nonresident fee program. The University has important financial interests in the program. It has promulgated rules and adopted a procedure for administering the program. Mr. Osmundson, by his own lack of actions, prevented the Review Committee from taking any action on his alleged application, and the Court does not know what the Committee's decision would have been. The Court is asked in effect to decide whether a decision that was never made was arbitrary and capricious. The issue is a constitutional one and was not clearly presented to the Court on an unambiguous record. Under these circumstances, the Court would abstain from ruling on Mr. Osmundson's claim even if a case or controversy existed. Cf. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814–16, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The Court sees no need to order a remand of Mr. Osmundson's case to the Review Committee in view of the fact that he has the right under the Board of Regents' rules to make a new application for resident classification during each semester or session he attends the University.

For the reasons stated above, the Clerk of Court is directed to enter judgment in favor of defendants and against plaintiffs. The parties shall bear their own costs.

IT IS SO ORDERED.