Anne **SPIELBERG**, Plaintiff,

v.

**BOARD OF REGENTS, UNIVERSITY OF MICHIGAN, Defendants.**

No. 84–CV–7190–AA.

United States District Court, E.D. Michigan, S.D.

Feb. 5, 1985.

Anne Spielberg, in pro per.

Peter A. Davis, Davis & Fajen, P.C., Ann Arbor, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

FEIKENS, Chief Judge.

Plaintiff, Anne Spielberg, brings her suit citing 42 U.S.C. § 1983, against the Board of Regents of the University of Michigan and alleges that her constitutional rights were violated when the University failed to reclassify her as an in-state student for purposes of tuition assessment. Defendant

moved to dismiss, or alternatively, for summary judgment. Several hearings, including an evidentiary hearing, were held on this matter. For reasons discussed herein, defendant's motion for summary judgment, is granted.

## I. BACKGROUND

Plaintiff moved to Ann Arbor, Michigan, on August 25, 1982, in order to attend the University of Michigan Law School. Plaintiff had never before lived in Michigan, and was admitted as an out-of-state student. On September 16, 1983, plaintiff filed an Application for Resident Classification for University Purposes in order to pay tuition at the reduced resident rate. Plaintiff's application for reclassification reveals the following facts: Plaintiff had continuously resided in Michigan for slightly more than one year when she applied for reclassification. Prior to her move to Ann Arbor, plaintiff lived in Washington, D.C. for nearly one year, and spent the three years before that, exclusive of summers, attending college in Oberlin, Ohio. Plaintiff's summers during college, her first year of college, and her high school years were spent in Atlanta, Georgia. Plaintiff was supported entirely by her father, a Georgia resident, during the years 1979–1981. During 1981–1982, plaintiff was self-supporting. In 1982–1983, plaintiff provided approximately 70% of her financial support, the balance coming from her father. Plaintiff's application for reclassification included a one-half page, hand-written statement indicating that she "came to Michigan with the intent of establishing [her] home [and believes that she] will continue to live, go to school and work in Michigan for the foreseeable future."

By letter dated November 9, 1983, Larry Katz, Assistant Registrar for the University of Michigan, denied plaintiff's application for reclassification. The substantive portion of this letter states:

> The regulations create a rebuttable presumption that one who comes to the University from outside Michigan shall be assessed student fees at the non-resident rate. To rebut the presumption, the regulations require an applicant to demonstrate that any previous domicile has been abandoned and that a Michigan domicile has been established. In order to establish a Michigan domicile, the applicant must be in continuous physical residence in this state; must intend to make Michigan a permanent home, not only while in attendance at the University but indefinitely thereafter as well; and must have no domicile or intent to be domiciled elsewhere.

> After reviewing your application, it is my determination that the evidence which you submitted in support of your application is insufficient to overcome the presumption of non-residence. I must, therefore, deny your petition.

The letter also described the appeals procedure available to plaintiff, which she pursued. Again, by letter dated December 21, 1983, the Residency Appeals Committee denied plaintiff's appeal stating that "it is the judgment of the Residency Appeal Committee that you have not demonstrated by sufficient evidence that you are entitled to resident reclassification under the [University's residency] regulations; therefore, it denies your appeal." Both letters indicated that plaintiff was eligible to apply for reclassification for any subsequent term, although plaintiff apparently declined to do so.

## II. DISCUSSION

Plaintiff argues that defendant, while acting under color of state law,[1] violated her rights under the due process and equal protection clauses of the fourteenth amend-

---

1. Plaintiff brings this suit under 42 U.S.C. § 1983 (1982), which provides in part:

 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

ment to the United States Constitution. U.S. CONST. amend. XIV, § 1. Her argument has three parts: First, plaintiff contends that she has a constitutional right to a statement of the reasons why the University denied her application for reclassification, and that the conclusory form letters she received from the Assistant Registrar and the Appeals Committee do not satisfy this requirement. Second, plaintiff argues that she was denied substantive due process because the decision to deny her application was arbitrary and capricious. Finally, plaintiff argues her application was treated differently than other students' applications in violation of the equal protection clause. I will address each argument in turn.

### A. *Procedural Due Process*

▮▮▮▮ The fourteenth amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Plaintiff clearly alleges a property interest in her tuition rates, thus triggering the procedural protection of the due process clause. However, "[o]nce it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). While due process is a flexible concept and the process which is due will vary with the facts of each case, the Supreme Court has articulated guidelines for analyzing due process questions:

> [O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the

probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). *See also Frumkin v. Board of Trustees*, 626 F.2d 19, 21 (6th Cir.1980); *Jaksa v. The Regents of the University of Michigan*, 597 F.Supp. 1245, 1248 (E.D.Mich.1984). At least three courts have undertaken this analysis and concluded that a university has no constitutional obligation to provide a detailed statement of reasons for denial of residency status. *Lister v. Hoover*, 706 F.2d 796 (7th Cir.1983); *Black v. Sullivan*, 561 F.Supp. 1050 (D. Maine 1983); *Michelson v. Cox*, 476 F.Supp. 1315 (S.D.Iowa 1979). I similarly conclude that the University did not violate the due process clause when it failed to provide plaintiff with a detailed statement of reasons.

First, I must consider the nature of plaintiff's interest in the University's refusal to reclassify her as a Michigan resident. It is important to note at the outset what is not at stake in this litigation. Plaintiff's interest in practicing law is not implicated, *cf. Willner v. Committee on Character and Fitness*, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963), nor does plaintiff have a fundamental right to attend law school, *see San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). All that is at stake here is the difference between instate and out-of-state tuition for a maximum of two years. This interest, though entitled to protection under the Constitution, is not the sort of interest requiring the maximum protection available under the due process clause.[2] *See Lister v. Hoo-*

---

**2.** To support her argument that plaintiff is entitled to a statement of reasons, she cites a number of cases where the Supreme Court held that the due process clause required such a statement. *See Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Wolff v. McDonnell*,

418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Willner v. Committee on Character and Fitness*, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963). From these cases, plaintiff concludes that she is enti-

ver, 706 F.2d at 804 (appended District Court opinion); *Michelson v. Cox*, 476 F.Supp. at 1321.

Second, I must consider whether the procedures currently used for deciding applications for reclassification adequately protect against erroneous results, and whether a detailed statement of reasons would reduce that risk. Initially, plaintiff's application is considered by Larry Katz, Assistant Registrar, and his two assistants, and a consensus opinion is reached. On appeal, a five-member Residency Appeal Committee considers the application de novo. In sum, eight people at two stages of review evaluate applications for reclassification, thus minimizing the risk of erroneous disposition of an application for reclassification. Further, it is difficult to see how a statement of reasons would reduce this risk, given the " 'nebulous' nature of the required administrative determination; that is, the bona fides of the expressed domiciliary intent of a full-time University student seeking a preferential tuition rate." *Black v. Sullivan*, 561 F.Supp. at 1062. The University's letter rejecting plaintiff's application makes clear that plaintiff failed to rebut the presumption that she remains an out-of-state resident.[3] The University's residency regulations similarly make clear what sort of evidence could rebut that presumption. In light of this information available to plaintiff, "[e]xhaustive detailing of the reasons for denying reclassification would be of dubious value in view of the highly subjective nature of the subject matter under inquiry." *Black v. Sullivan*,

561 F.Supp. at 1063. Accordingly, I hold that under the procedures currently employed by the University, the risk of error is relatively slight, and that risk would not be reduced noticeably by requiring such a statement.

■ Finally, I must consider the state's interest and the added fiscal and administrative burden if the University were required to issue statements of reasons for denial of applications for reclassification. Clearly, Michigan has a "legitimate interest in protecting and preserving the quality of its colleges and universities and the right of its own bona fide residents to attend such institutions on a preferential tuition basis." *Vlandis v. Kline*, 412 U.S. 441, 453, 93 S.Ct. 2230, 2237, 37 L.Ed.2d 63 (1973); *Kelm v. Carlson*, 473 F.2d 1267, 1270 (6th Cir.1973); *Michelson v. Cox*, 476 F.Supp. at 1320. This interest, moreover, is "of broad significance because it implicates not only the financial resources of the state but also the opportunity of all [state] high school graduates to obtain a college education." *Lister v. Hoover*, 706 F.2d at 803.

Requiring the University to issue detailed statements of reasons for denial of each application for reclassification would impose a significant administrative burden on the University. The University receives a substantial number of applications for reclassification each term. For example, in fall, 1983, the term in which plaintiff filed her application, 703 applications for residency status were filed, and nearly one

---

tled to a statement of reasons. This reasoning, however, fundamentally misperceives the nature of the due process clause. It could hardly be more clear that due process is a flexible concept, and the process which is due in one context may not be due in another. In each of the cases cited above, the plaintiff's interest in the government's action was significantly more profound than this plaintiff's interest. *Goss v. Lopez* involved school suspensions, *Wolff v. McDonnell* involved prison discipline, *Morrissey v. Brewer* involved parole revocation, and *Willner v. Committee on Character and Fitness* involved bar certification. Accordingly, plaintiff's reliance on these cases, and others where the plaintiff's interest is greater, is misplaced.

3. Such a presumption is clearly constitutional: "[I]t is neither arbitrary nor unreasonable for [a university] to place a strong burden of proof as to change of residence on a former out-of-state student who claims ... residency lest such claim be founded only upon the student's desire to escape the tuition surcharge." *Kelm v. Carlson*, 473 F.2d 1267, 1270–71 (6th Cir.1973). *See also Hooban v. Boling*, 503 F.2d 648, 650 (6th Cir.1974), *cert. denied*, 421 U.S. 920, 95 S.Ct. 1585, 43 L.Ed.2d 788 (1975) ("[T]he rebuttable presumption of out-of-state status do[es] not violate the Equal Protection Clause ....") (citing *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973)).

half of those were rejected. Accordingly, the University would have had to issue over 300 statements explaining its reasons for denying residency status. These statements, moreover, would be difficult and time consuming to write. Because the question of a student's intent to make Michigan his permanent home is "subject to no formula, but rather depends on the facts of each case," *Hooban v. Boling,* 503 F.2d 648 (6th Cir.1974), *cert. denied,* 421 U.S. 920, 95 S.Ct. 1585, 43 L.Ed.2d 788 (1975), it would be very difficult to articulate the precise weight accorded each factor in the University's decision. This is a demanding task, and given the larger number of applications the University receives each term, such a requirement would impose a significant administrative, as well as financial, burden. *Lister v. Hoover,* 706 F.2d at 804; *Michelson v. Cox,* 476 F.Supp. at 1322.

After careful consideration of the three factors relevant to determining what process is due, I hold that the University has no constitutional obligation to provide plaintiff with a detailed statement of the reasons her application was denied. Due process is a flexible concept and involves balancing the competing interests of the parties. *Mathews v. Eldridge,* 424 U.S. at 334, 96 S.Ct. at 902. Here, plaintiff's interest is relatively slight. While it is true that, to plaintiff, a significant amount of tuition money is involved, her claim does not involve a fundamental or essential right. Plaintiff's interest, moreover, is adequately protected through the procedures which the University currently employs. Finally, the University has a substantial interest in administering its tuition and residency policy. Such management of the University's own internal affairs is "an essential function traditionally immune from interference." *Lister v. Hoover,* 706 F.2d at 804. Accordingly, as I balance the competing interests of the parties to this litigation, I hold that the University has given plaintiff the process that is due under the fourteenth amendment.

**B.** *Substantive Due Process*

Plaintiff argues that the University deprived her of her substantive due process rights when it denied her application for reclassification as a Michigan resident. Plaintiff does not contend that the Residence Regulations of the University of Michigan are unconstitutional, and in fact, the Michigan Court of Appeals implicitly approved these regulations. *Hauslohner v. Regents of the University of Michigan,* 85 Mich.App. 611, 272 N.W.2d 154 (1978). Rather, plaintiff apparently contends that she presented enough evidence to compel the conclusion that she is a Michigan resident, and the University's failure to grant her application was arbitrary or capricious.

▬ The due process clause protects individuals from arbitrary and capricious state action. In order to establish that the University's actions were arbitrary or capricious, plaintiff must establish that "there is no rational basis for the University's decision, ... or that the decision ... was motivated by bad faith or ill will...." *Stevens v. Hunt,* 646 F.2d 1168, 1170 (6th Cir.1981). *See also Black v. Sullivan,* 561 F.Supp. at 1061 (A "decision may not be 'wholly unsupported' by fact, and its rationale may not be either trivial or irrelevant."). My task, moreover, is not to decide "whether the University's decision was unwise, but whether it was 'so irrational that it may be branded "arbitrary." ' " *Black v. Sullivan,* 561 F.Supp. at 1064 (quoting *Kelley v. Johnson,* 425 U.S. 238, 248, 96 S.Ct. 1440, 1446, 47 L.Ed.2d 708 (1976)). Under the facts of this case, I conclude that the University's decision to deny plaintiff's application for reclassification was neither arbitrary nor capricious.

The Residence Regulations of the University of Michigan (approved by the Board of Regents, March 15, 1974) provide in part:

1. Since normally a student comes to The University of Michigan for the primary or sole purpose of attending the University rather than to establish a domicile in Michigan, one who enrolls in the University as a non-resident shall

continue to be so classified throughout his attendance as a student, unless and until he demonstrates that his previous domicile has been abandoned and a Michigan domicile established.

2. No student shall be eligible for classification as a resident unless he shall be domiciled in Michigan and has resided in Michigan continuously for not less than one year immediately preceding the first day of classes of the term for which classification is sought.

3. For purposes of these regulations, a resident student is defined as a student domiciled in the State of Michigan. A non-resident is defined as one whose domicile is elsewhere. A student shall not be considered domiciled in Michigan unless he is in continuous physical residence in this state and intends to make Michigan his permanent home, not only while in attendance at the University, but indefinitely thereafter as well, and has no domicile or intent to be domiciled elsewhere.

4. The following facts and circumstances, although not necessarily conclusive, have probative value in support of a claim for residence classification:

a. Continuous presence in Michigan during periods when not enrolled as a student.

b. Reliance upon Michigan sources for financial support.

c. Domicile in Michigan of family, guardian or other relatives or persons legally responsible for the student.

d. Former domicile in the state and maintenance of significant connections therein while absent.

e. Ownership of a home in Michigan.

f. Admission to a licensed practicing profession in Michigan.

g. Long term military commitments in Michigan.

h. Commitments to further education in Michigan indicating an intent to stay here permanently.

i. Acceptance of an offer of permanent employment in Michigan.

Other factors indicating an intent to make Michigan the student's domicile will be considered by the University in classifying a student.

5. The following circumstances, standing alone, shall not constitute sufficient evidence of domicile to effect classification of a student as a resident under these regulations:

a. Voting or registration for voting.

b. Employment in any position normally filled by a student.

c. The lease of living quarters.

d. A statement of intention to acquire a domicile in Michigan.

e. Domicile in Michigan of student's spouse.

f. Automobile registration.

g. Other public records, e.g. birth and marriage records.

Plaintiff applied for reclassification several weeks after she became eligible to do so. *See* Regulation 2. In support of her application, plaintiff asserts that her car is registered and insured in Michigan, she has a Michigan's driver's license, she votes in Michigan, she has a Michigan bank account, she paid taxes as a Michigan resident, and she worked for one summer in Michigan. Under Regulation 5, these facts, standing alone, are insufficient evidence of plaintiff's intent to make Michigan her permanent home. Plaintiff's evidence is not persuasive because "all of these indicia of domiciliary intent are readily established by students having no intention to remain in [Michigan] beyond graduation." *Black v. Sullivan,* 561 F.Supp. at 1063. If these facts were sufficient to rebut the presumption that one who enrolls in the University as a non-resident remains a non-resident, then the University would be required to

reclassify as a resident every student who, after attending the University for a year, makes a self-serving declaration that he intends to reside in [Michigan] permanently and performs a series of "objective" acts, some of which are required by law and all of which are customarily done by some non-resident students who do not intend to remain in

[Michigan] after graduation. This would, in effect, create a presumption that any such student *is* a bona fide [Michigan] resident, thus seriously jeopardizing the University's nonresident tuition program and consequently its entire financial structure. It would remove the tuition decision from the hands of the University and place it in the student's. *Michelson v. Cox*, 476 F.Supp. at 1320.

Moreover, plaintiff failed to present any persuasive evidence of domiciliary intent. Unlike plaintiff's evidence, the facts and circumstances which the University finds probative of domiciliary intent, *see* Regulation 4, could not practically be offered by a student who intends to leave Michigan after graduation. *See Black v. Sullivan*, 561 F.Supp. at 1063 ("Certain circumstantial evidence of domiciliary intent is appropriately considered either conclusive, because the game is simply not worth the candle, *e.g.*, marriage to a [state] resident, or particularly persuasive, because its production for tuition-rate purposes is impractical, *e.g.*, preadmission affiliations with [this state].") (footnote omitted). While it is true that the evidence plaintiff offered is consistent with an intent to remain in Michigan, it is equally consistent with an intent to leave Michigan upon graduation. Therefore, plaintiff failed to rebut the presumption that a student who comes to Michigan solely or primarily to attend the University remains a non-resident. Accordingly, the University's decision to deny plaintiff's application for reclassification is well supported by the evidence, and I am unable to conclude that it is arbitrary or capricious.

## C. *Equal Protection*

 Plaintiff alleges that the University has deprived her of "the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Specifically, plaintiff argues that "there may be whole groups of students who pay instate tuition without being reclassified from out-of-state to instate residency status because of their arrangement with the University of Michigan as teaching assistants.... Because the University wants to attract graduate students and has a financial incentive to make aid to them as inexpensive as possible, they may be impermissibly circumventing the residency regulations." (Plaintiff's Brief on Legal Issues at 8, Filed December 31, 1984). Because these students may pay tuition at a reduced rate and plaintiff does not, she argues that the Residency Regulations have not been applied in an evenhanded and consistent manner. I disagree.

Larry Katz testified that all students are classified as residents or non-residents for tuition purposes, and there is no evidence that different criteria apply to different classes of students. Katz indicated, however, that graduate student teaching assistants may have a contractual arrangement with the University enabling them to pay only a portion of the tuition they would otherwise be required to pay. Clearly, the University may permissibly contract in this manner with those it employs as teaching assistants.[4] More to the point, however, such an arrangement has no bearing on plaintiff's case. She is not a teaching assistant, nor is there any evidence that she provides valuable services to the University which could even arguably entitle her to a tuition reduction or credit. Thus, plaintiff is not similarly situated to those teaching assistants to whom she compares herself. Accordingly, her equal protection argument is without merit.

---

**4.** To the extent that a University rule, regulation, or practice distinguishes between teaching assistants and non-teaching assistants for tuition purposes, such a distinction would not violate the equal protection clause. This distinction does not involve a fundamental right, *cf. Starns v. Malkerson*, 326 F.Supp. 234 (D.Minn.1970), *affd. without opinion*, 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971), and therefore will be found constitutional if it is rationally related to a legitimate state purpose. *See San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Here, a state's providing higher educational opportunities to its residents is clearly a legitimate state purpose, and reducing the tuition of teaching assistants as a means of attracting them to the University is rationally related to that purpose. Therefore, a distinction between teaching assistants and non-teaching assistants for tuition purposes would not violate the equal protection clause.

## III. CONCLUSION

■ After carefully balancing the competing interests in this case, I hold that plaintiff is not entitled to a detailed statement of the reasons her application for reclassification was denied, and therefore, the University complied with the procedural requirements of the due process clause. I further hold that the University's decision not to reclassify plaintiff as a Michigan resident was neither arbitrary nor capricious. Finally, I hold that plaintiff's claim of denial of equal protection is without merit. I do not find, however, as the University suggests, that plaintiff's case is so "frivolous, unreasonable or without foundation" to entitle the University to attorney's fees under 42 U.S.C. § 1988 (1982).

Accordingly, for the reasons discussed herein, IT IS ORDERED that defendant's motion for summary judgment shall be and hereby is GRANTED.