**Thomas E. LISTER, et al.,**
**Plaintiffs-Appellants,**

v.

**Thomas H. HOOVER, et al.,**
**Defendants-Appellees.**

No. 82–1595.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 22, 1982.

Decided May 16, 1983.

Rehearing and Rehearing En Banc Denied Aug. 18, 1983.

---

Swygert, Senior Circuit Judge, dissented and filed opinion.

Steven J. Kirschner, Ross & Stevens, S.C., Madison, Wis., for plaintiffs-appellants.

LeRoy L. Dalton, Asst. Atty. Gen., Dept. of Justice, Madison, Wis., for defendants-appellees.

Before ESCHBACH, Circuit Judge, SWYGERT, Senior Circuit Judge, and CAMPBELL, Senior District Judge.[*]

WILLIAM J. CAMPBELL, Senior District Judge.

■ This is an appeal from the district court's grant of summary judgment for the defendants in a case challenging the constitutionality of Wisconsin's procedures for determining the residency of individuals for tuition purposes at state universities. This case has been the subject of a state action, *Lister v. Board of Regents,* 72 Wis.2d 282, 240 N.W.2d 610 (1976); and two federal appeals, *Lister v. Lucey,* 575 F.2d 1325 (7th Cir.), *cert. den.* 439 U.S. 865, 99 S.Ct. 190, 58 L.Ed.2d 175 (1978); *Lister v. Hoover,* 655 F.2d 123 (7th Cir.1981). Based on the remand on the last appeal, the only issue before the district court was whether the Committee of Appeals at the University of Wisconsin (Madison) was required by the due process clause of the fourteenth amendment to give written reasons for its denial of a student's request to be classified as a state resident for tuition purposes. Upon cross motions for summary judgment, the district court answered the question in the negative and the plaintiffs appealed to this Court. We conclude that the district judge properly analyzed the issue raised and hereby affirm and adopt its opinion which is reprinted in the Appendix to this opinion.

SWYGERT, Senior Circuit Judge, dissenting.

The plaintiffs in this case are three former students of the University of Wisconsin at Madison who sought to be classified as Wisconsin residents for tuition purposes during 1971 and 1972, after residing in the state for more than one year. Wisconsin

* The Honorable William J. Campbell, Senior District Judge for the United States District Court for the Northern District of Illinois, is sitting by designation.

state law then in force established different tuition rates for residents and nonresidents, Wis.Stat. § 36.16 (1971) (current version at Wis.Stat. § 36.27 (1979–80)), and provided, with some exceptions, *see id.* § 36.16(1)(a)–(ak), that "[a]ny student who has not been a resident of the state for one year next preceding the beginning of any semester for which such student registers at the university" must pay the nonresident rate, *id.* § 36.16(1)(b). If nonresidency at the time of enrollment raised an irrebuttable presumption of continued nonresidency during a student's entire educational career, the statute would be unconstitutional as a denial of due process. *See Vlandis v. Kline,* 412 U.S. 441, 448, 93 S.Ct. 2230, 2234, 37 L.Ed.2d 63 (1973). The Wisconsin statute, as interpreted by the district court, avoided this pitfall by providing students an opportunity to rebut the presumption of continued nonresidency by applying for reclassification. In particular, the statute provided:

> In determining bona fide residence, filing of state income tax returns in Wisconsin, eligibility for voting in this state, motor vehicle registration in Wisconsin, and employment in Wisconsin shall be considered. Notwithstanding par. (1)(a), a student from another state who is in this state principally to obtain an education will not be considered to have established a residence in Wisconsin by virtue of attendance at educational institutions.

Wis.Stat. § 36.16(3) (1971) (current version at Wis.Stat. § 36.27(2)(e) (1979–80), making the rebuttability of the presumption explicit). The plaintiffs sought to show bona fide residence in accordance with this section by demonstrating that they met all or nearly all of the nonexclusive listed criteria, and by submitting additional evidence of bona fide residency such as local home ownership, membership in local organizations, or the reclassification of a spouse as a resident. Each plaintiff was at least initially denied reclassification, and each challenged the procedure by which residency determinations are made. On this appeal the only issue is whether the due process clause of the fourteenth amendment requires the Appeals Committee, which reviews determina-

tions of residency by the Registrar, to provide to unsuccessful applicants a statement of reasons for denial. Because I disagree with the majority's conclusion that no statement of reasons is required, I dissent.

Analysis of every due process claim requires a two-part inquiry: first, the identification of a life, liberty, or property interest entitled to procedural protection, and second, the determination of what process is due before the government may take action affecting that interest. *See Board of Regents v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). No one disputes that in the present case the plaintiffs' claimed entitlement to lower tuition constitutes a property interest; the sole question before the court is what process is due. Although the standards for identifying appropriate procedures are inexact, I believe that Supreme Court decisions requiring statements of reasons as the minimal degree of process necessary for determining factual issues control the result in this case.

The framework for determining the necessary level of procedures was explicated in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976): a court must consider the nature and weight of the private and public interests involved, and the value of additional procedural safeguards. The individual interest in not paying the difference between nonresident and resident tuition rates, even if considered in one-semester increments (although I wonder whether the state could by this reasoning slice the plaintiffs' interest ever finer simply by allowing continuous reclassification requests), is weightier than the majority admits. Although the amount of money at issue may not be great on an absolute scale, the court must consider its importance to the individual. *See id.* at 341, 96 S.Ct. at 905; *Goldberg v. Kelly,* 397 U.S. 254, 261–63, 90 S.Ct. 1011, 1016–18, 25 L.Ed.2d 287 (1970). Requiring a resident student to pay the nonresident rate may delay or foreclose educational opportunities, which are an important interest even if not a "fundamental right." *See Goss v. Lopez,*

419 U.S. 565, 575, 576, 95 S.Ct. 729, 736, 737, 42 L.Ed.2d 725 (1975). At the same time, the majority overstates the government's interest. Wisconsin's interest in maintaining the quality of its universities and preserving its financial resources by collecting higher tuition from nonresidents, although probably legitimate, *see Vlandis v. Kline,* 412 U.S. at 445, 93 S.Ct. at 2232, is not the interest at stake. Nor is Wisconsin's interest in controlling its treasury, out of which refunds may be paid to students whose classifications as nonresidents are reversed, at issue: if those students are determined to be residents, Wisconsin's interest in collecting higher tuition from them was disclaimed by the enactment of Wis.Stat. § 36.16 (1971), which permitted the tuition preference for residents. *Cf. Vlandis v. Kline,* 412 U.S. at 448–49, 93 S.Ct. at 2234–35. Wisconsin's only interest is in avoiding the administrative burden of providing statements of reasons. This interest is small because the Appeals Committee already conducts individualized hearings, at which it is obliged to make reasoned and nonarbitrary decisions. "It simply is not unduly 'burdensome to give reasons when reasons exist. Whenever an application ... is denied ... there should be some reason for the decision. It can scarcely be argued that government would be crippled by a requirement that the reason be communicated to the person most directly affected by the government's action.' ... And an inability to provide any reasons suggests that the decision is, in fact, arbitrary." *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex,* 442 U.S. 1, 39–40, 99 S.Ct. 2100, 2120, 60 L.Ed.2d 668 (1978) (Marshall, J., dissenting) (footnote omitted) (quoting *Board of Regents v. Roth,* 408 U.S. at 591, 92 S.Ct. at 2716 (Marshall, J., dissenting)). This deduction that the burden of stating existing reasons cannot be crushing is confirmed by the state's example in other cases. The Appeals Committee has in the past stated reasons for denials, *see Zalucha v. Board of Regents,* 99 Wis.2d 806, 301 N.W.2d 461, slip op. at 10 (Wis.App.1980), and the Registrar has stated reasons for decisions granting

reclassification, *see* letter from T.H. Hoover to James S. Thiel (Jan. 7, 1972), App. 19.

The defendants argue, however, that the state has a further interest in not providing statements of reasons: they fear that if the residency standards are made so explicit, students will be able to comply and thereby thwart the state's interest in charging them the nonresident rate. This argument raises the third *Mathews v. Eldridge* consideration, the value of the proposed procedure. The short answer to the argument would seem to be "so what?": if students do comply with the criteria for residency the state has no legitimate interest in classifying them as nonresidents, as *Vlandis v. Kline,* 412 U.S. at 448–49, 93 S.Ct. at 2234–35, demonstrates. Indeed, one of the benefits of statements of reasons generally is that they enable people to conform their conduct to the law's requirements. *Cf. Mathews v. Eldridge,* 424 U.S. at 346, 96 S.Ct. at 908 (procedures that include a statement of reasons for the cutoff of disability benefits satisfy due process because they "enable the recipient to 'mold' his argument to respond to the precise issues which the decisionmaker regards as crucial"). But the defendants argue that this answer mistakes the object of the administrative inquiry: the Wisconsin statute focuses on the student's intent, which could be falsified if the Appeals Committee were required to evaluate it by a rigid list of objective indicia. The defendants stress that the inquiry demanded by the statute cannot be so confined because subjective intent is nebulous and not quantifiable.

I find this argument unpersuasive for several reasons. First, the defendants' assumption that a statement of reasons would have to specify objective criteria of intent and thereby attempt to quantify the unquantifiable is unwarranted. The decisionmaker need not build up a hypothetical successful case, but only specify the faults in the actual case that make it unsuccessful. The statute's list of four possible indicia of residency (payment of state income tax, voter registration, motor vehicle registration, and local employment) indicates that

those criteria may be sufficient. If a student demonstrates that he satisfies those or other similar criteria and yet is classified as a nonresident, it must be because the decisionmaker perceived some positive reason to doubt the student's sincerity, not because the student failed to reach some unspecified prima facie threshold. If the decisionmaker cannot state those positive reasons we are left with the impression that the decision is either unreasoned or based on illegitimate reasons. Indeed, the statutory scheme of review under Wisconsin's Administrative Procedure Act ("APA"), Wis.Stat. §§ 227.-01–227.26 (1979–80), appears to require the recordation of the facts that tarnished the positive evidence presented by the student. The APA makes decisions of the kind at issue here reviewable by the "substantial evidence" standard. *Id.* § 227.20. If the only evidence in the record is that presented by the student, and not the factual evaluations of credibility and the like made by the decisionmaker, review by the appropriate standard will be frustrated. *Cf. Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971) ("[S]ince the bare record may not disclose the factors that were considered or the Secretary's construction of the evidence it may be necessary ... to require some explanation in order to determine if the Secretary acted within the scope of his authority and if the Secretary's action was justifiable under the applicable standard."). The value of reviewability has been recognized as a reason to impose the procedural requirement of a statement of reasons. *See Wolff v. McDonnell,* 418 U.S. 539, 564–65, 94 S.Ct. 2963, 2978–79, 41 L.Ed.2d 935 (1974). *See also Hewitt v. Helms,* —— U.S. ——, ——, 103 S.Ct. 864, 883, 74 L.Ed.2d 675 (1983) (Stevens, J., dissenting); Morgan, *The Constitutional Right to Know Why,* 17 Harv.C.R.–C.L.L.Rev. 297, 300–05 (1982). At the same time, the inability to conduct searching review caused by the lack of a statement of reasons demonstrates, for purposes of *Mathews v. Eldridge* balancing, that the existing review procedure does not constitute an · independent safeguard against error. *See Goss v. Lopez,* 419 U.S. at 581 n. 10, 95 S.Ct. at 740 n. 10.

Second, the object of the inquiry—the student's intent—is subjective only on the part of the student, not on the part of the decisionmaker; the issue is factual, not discretionary. In many cases involving similar kinds of factfinding the Supreme Court has held that statements of reasons are required as the skeletal level of process due. *See id.* at 581, 95 S.Ct. at 739 (due process "requires at least [the] rudimentary precaution[ ]" of, inter alia, a statement of reasons before school discipline is imposed); *Wolff v. McDonnell,* 418 U.S. at 563, 94 S.Ct. at 2978 (revocation of prisoner's good-time credits); *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973) (revocation of probation); *Morrissey v. Brewer,* 408 U.S. 471, 483–84, 489, 92 S.Ct. 2593, 2601, 2604, 33 L.Ed.2d 484 (1972) (revocation of parole); *Willner v. Committee on Character & Fitness,* 373 U.S. 96, 105, 83 S.Ct. 1175, 1181, 10 L.Ed.2d 224 (1963) (bar certification). *See also Mathews v. Eldridge,* 424 U.S. at 346, 96 S.Ct. at 908 (procedure of providing statements of reasons satisfies minimal process due). The minimal nature of the process demanded in these cases is especially notable in those involving prisoners, because the Court has held their liberty interest to be so narrow as to require only abbreviated procedures. *Hewitt v. Helms,* —— U.S. at ——, 103 S.Ct. at 871. *See also* 2 K. Davis, Administrative Law Treatise §§ 13.1–13.15 (2d ed. 1979) (urging a requirement of a statement of reasons even when very little process is due); Rabin, *Job Security and Due Process: Monitoring Administrative Discretion Through a Reasons Requirement,* 44 U.Chi. L.Rev. 60, 74–93 (1976) (same). In most of these cases the central factual inquiry was not crisp or quantifiable. *See, e.g., Morrissey v. Brewer,* 408 U.S. at 483–84, 92 S.Ct. at 2601 (distinguishing discretionary and factual elements of decisions to revoke parole). But only when the Court has characterized a decision as purely discretionary has it held that no statement of reasons is required, because then the value of that procedure is diminished. *See Hewitt v.*

*Helms,* —— U.S. at ——, 103 S.Ct. at 872 (transfer to administrative segregation pending investigation); *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 464–66, 101 S.Ct. 2460, 2463–65, 69 L.Ed.2d 158 (1981) (commutation of sentence); *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex,* 442 U.S. 1, 15–16, 99 S.Ct. 2100, 2107–08, 60 L.Ed.2d 668 (1978) (denial of parole); *Baxter v. Palmigiano,* 425 U.S. 308, 322–23, 96 S.Ct. 1551, 1559–60, 47 L.Ed.2d 810 (1976) (disciplinary proceedings in prison). Indeed, the Court sometimes imposes reasons requirements as an administrative matter even when the decision at issue is reviewable only for abuse of discretion. *See Dunlop v. Bachowski,* 421 U.S. 560, 571–74, 95 S.Ct. 1851, 1859–61, 44 L.Ed.2d 377 (1975); *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. at 420, 91 S.Ct. at 825; *see generally* 3 K. Davis, Administrative Law Treatise §§ 14.21–14.-29 (2d ed. 1980). In the present case the state's power to reclassify students is not discretionary, but must be exercised in accordance with a specific statutory criterion. Rudimentary due process therefore requires that statements of reasons explaining particular exercises of that power be furnished.

Finally, statements of reasons have other social values that weigh in the *Mathews v. Eldridge* balance. In addition to the "instrumental values" of reviewability, clarity, and consistency, furnishing such statements would promote "process values" by fostering a sense of participation and fairness. In short,

> this requirement would direct the decisionmaker's focus "to the relevant ... criteria and promote more careful consideration of the evidence. It would also enable [students] to detect and correct inaccuracies that could have a decisive impact. And the obligation to justify a decision publicly would provide the assurance, critical to the appearance of fairness, that the [Appeals Committee's] decision is not capricious." ... A written statement of reasons would facilitate administrative and judicial review and

might give the [student] an opportunity to [alter] his conduct.

*Hewitt v. Helms,* —— U.S. at ——, 103 S.Ct. at 883 (Stevens, J., dissenting) (footnote omitted) (quoting *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex,* 442 U.S. at 40, 99 S.Ct. at 2120 (Marshall, J., dissenting)). *See also Dunlop v. Bachowski,* 421 U.S. at 572, 95 S.Ct. at 1860 ("a 'reasons' requirement promotes thought by the Secretary and compels him to cover the relevant points and eschew irrelevancies, and ... assure[s] careful administrative consideration"); *Wolff v. McDonnell,* 418 U.S. at 565, 94 S.Ct. at 2979 ("the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights have been abridged, will act fairly"); *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 172, 71 S.Ct. 624, 649, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring) (noting "the feeling, so important to a popular government, that justice has been done") (footnote omitted); L. Tribe, American Constitutional Law 502–03, 554 (1978); Summers, *Evaluating and Improving Legal Processes—A Plea for "Process Values,"* 60 Cornell L.Rev. 1 (1974); Tribe, *Structural Due Process,* 10 Harv.C.R.–C.L.L.Rev. 270 (1975). *See generally* Morgan, *The Constitutional Right to Know Why,* 17 Harv.C.R.–C.L.L.Rev. 297 (1982). These values are substantial enough to outweigh the defendants' interest in avoiding administrative expense and bother, because " 'the Constitution recognizes higher values than speed and efficiency,' " *Vlandis v. Kline,* 412 U.S. at 451, 93 S.Ct. at 2236 (quoting *Stanley v. Illinois,* 405 U.S. 645, 656, 92 S.Ct. 1208, 1215, 31 L.Ed.2d 551 (1972) (footnote omitted)), and the defendants' interest is modest.

For these reasons I respectfully dissent. Because the majority does not reach the defendants' contention that, apart from the merits, they enjoy qualified immunity from damage claims like the present one, I pass over that issue.

802

## APPENDIX

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
[Filed February 26, 1982]

THOMAS E. LISTER, and )
PAUL W. TURLEY, )
)
Plaintiffs, )
)
v. )
)
THOMAS H. HOOVER, LON ) Opinion and Order
W. WEBER, and DAVID J. ) No. 71-C-409
HANSON, )
)
Defendants. )

This is presently a civil action only for damages. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. Before me are cross motions for summary judgment.

The only claim remaining upon remand from the court of appeals is that defendants, members of the Committee on Appeals at the University of Wisconsin-Madison (the Committee), failed to state reasons for their denial of classification of plaintiffs as bona fide residents of Wisconsin for tuition purposes and, in doing so, violated plaintiffs' right under the due process clause of the fourteenth amendment of the Constitution of the United States. *Lister v. Hoover,* 655 F.2d 123 (7th Cir.1981).

### Facts

For the purpose of deciding the cross motions for summary judgment, I refer to those facts incorporated in my prior ruling on plaintiffs' motion for partial summary judgment, under the heading "Facts," as to which there is no genuine issue. *Lister v. Hoover,* No. 71-C-409, slip op. at 3-20 (W.D.Wis., May 9, 1980).

### Opinion

" '[D]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); *Cafeteria & Restaurant Workers Union v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961), *rehearing denied,* 368 U.S. 869, 82 S.Ct. 22, 7 L.Ed.2d 70 (1961); *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 162-163, 71 S.Ct. 624, 643-644, 95 L.Ed. 817 (1951). Determining whether due process requires a statement by the Committee of its reasons for denying resident status for tuition purposes requires the consideration and balancing of three distinct factors: first, "the private interest that will be affected by the official action"; second, "the government's interest, including the function involved and the fiscal and administrative burdens that the statement would entail"; and third, "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any," of a statement of reasons. *Mathews v. Eldridge,* 424 U.S. at 335, 96 S.Ct. at 903.

### Private interest affected

■ Residents of Wisconsin enjoy a property interest in the tuition advantage available to them. *Lister v. Hoover,* No. 71-C-409 (W.D.Wis., May 9, 1980); *see Vlandis v. Kline,* 412 U.S. 441, 453, 93 S.Ct. 2230, 2237, 37 L.Ed.2d 63 (1973). The property interest at stake is limited to the difference between resident and nonresident student tuition for a single semester, because the student has an opportunity each semester to seek reevaluation of nonresident status. This difference varied from $770 for autumn 1970 to $780 for spring 1972.

■ It is important to note what interests of plaintiffs are not at stake. Even if there were a right to a higher education, which there is not (*Sturgis v. State of Washington,* 368 F.Supp. 38 (W.D.Wash. 1973), *aff'd mem.* 414 U.S. 1057, 94 S.Ct. 563, 38 L.Ed.2d 464 (1973); *see San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), *rehearing denied,* 411 U.S. 959, 93

APPENDIX—Continued

S.Ct. 1919, 36 L.Ed.2d 418 (1973)), plaintiffs are not permanently disabled from taking courses. This case does not involve a denial of the opportunity to enter a certain profession. *Willner v. Committee on Character and Fitness,* 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963) (holding that petitioner was denied due process when he was denied admission to the Bar without a hearing on the charges filed against him). Finally, denial of nonresident status does not bestow a badge of disloyalty or infamy or otherwise stigmatize plaintiffs' reputation, with an attendant foreclosure from other employment or educational opportunities. *Cafeteria Workers v. McElroy,* 367 U.S. at 898, 81 S.Ct. at 1750; *see Wieman v. Updegraff,* 344 U.S. 183, 190–191, 73 S.Ct. 215, 218, 97 L.Ed. 216 (1952); *Joint Anti-Fascist Committee v. McGrath,* 341 U.S. at 140–141, 71 S.Ct. at 632.

However large and important the tuition reduction may seem to students on a tight budget, and possibly without income, in a constitutional perspective plaintiffs' interest is slight. In *Michelson v. Cox,* 476 F.Supp. 1315, 1321 (S.D.Iowa, 1979), responding to a claim that a state university's review committee's failure to render detailed findings of fact in denying to reclassify student plaintiffs as residents for tuition purposes violated the due process clause of the fourteenth amendment, the court stated:

> ... the property interest that plaintiff or any University of Iowa student has in the difference between the resident and nonresident tuition rate is slight both in an absolute monetary sense and relative to the other types of rights protected by the Constitution.

Plaintiffs' interests are not nearly as significant as the expectation of conditional freedom on parole urged by plaintiffs as an analogy.

### Government interest and function

The governmental interest involved is the state's "legitimate interest in protecting and preserving the quality of its colleges and universities and the right of its own bona fide residents to attend such institutions on a preferential tuition basis." *Vlandis v. Kline,* 412 U.S. at 453, 93 S.Ct. at 2237. This interest is of broad significance because it implicates not only the financial resources of the state but also the opportunity of all Wisconsin high school graduates to obtain a college education.

The governmental function involved is the state's fiscal management of its own internal affairs. Because a student will often be required to pay nonresident tuition while awaiting action by the Committee, the Committee's reversal of a Registrar's decision of nonresident status often requires disbursement from the state treasury. *Cf. Lister v. Board of Regents,* 72 Wis.2d 282, 240 N.W.2d 610 (1976). Should the Committee affirm the Registrar's decision, the student must make a claim to the state legislature for refund of tuition overpayment under Wis.Stat. § 285.01 before filing an action on the debt in court. *Lister v. Board of Regents,* 72 Wis.2d at 297, 240 N.W.2d 610.

Section 285.01 constitutes a consent by the state to be sued, a waiver of sovereign immunity, upon the condition that the claim be presented to the legislative claims committee. *Lister v. Board of Regents,* 72 Wis.2d at 297, 240 N.W.2d 610. This waiver suggests that in ordering a refund pursuant to reclassification, the Committee function is analogous to one which is traditionally immune from external interference.

Cases in which the government's control of others' activities is challenged are distinguishable on this point. From a practical perspective, the government need not regulate the commercial exchange of green stamps (*Federal Trade Commission v. Sperry & Hutchinson Co.,* 405 U.S. 233, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972)) or stockyard rates (*Morgan v. United States,* 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938)), for example, but it must regulate its treasury.

APPENDIX—Continued

The burden imposed on the government by a requirement of a statement of reasons would presumably include the preparation of at least some minimal findings of fact in each case and some explanation of the reasoning by which the committee reached its decision on the basis of those facts. Because of the large number of appeals (four hundred eighty-eight in the two year period in question) and the large number of facts submitted by students in support of their appeals, "the preparation of detailed findings of fact in every case would entail considerable administrative expense and delay." *Michelson v. Cox*, 476 F.Supp. at 1322.

Because analysis of a student's intent as to bona fide residency is "incapable of purely objective definition" (*Lister v. Hoover*, 655 F.2d at 126), often the Committee's reasons could not be expressed in a few objective factors or succinct principles. In order not to mislead, the Committee would be obliged to indicate somehow the weight to be given any objective factor mentioned. This would be a demanding task, because the "relative weight to be given each objective factor is not capable of quantification." *Hooban v. Boling*, 503 F.2d 648, 652 (6th Cir.1974) *cert. denied*, 421 U.S. 920, 95 S.Ct. 1585, 43 L.Ed.2d 788 (1975). An adequate explanation would also entail a discussion of the student's demeanor and other facts affecting credibility. This would involve further administrative burdens and delay. These administrative burdens necessarily have an attendant financial cost.

In sum, a requirement of a statement of reasons would impose significant administrative and fiscal burdens on the state in the management of its own internal fiscal affairs, an essential function traditionally immune from interference.

*Probable value of requirement of statement of reasons*

Analysis of the probable value, if any, of a statement of reasons, begins with an evaluation of the risk of an erroneous deprivation of plaintiffs' property interest through the procedures now used. There are presently four opportunities for reclassification, each before a different body of decision-makers. Reconsideration of initial classification may be sought not only from the Registrar and the Committee, but from two other, independent branches of state government: the legislature and the state courts. The student has an opportunity to present to the Registrar and the Committee evidence not considered in the original classification. Before the Committee, at least, the student has an opportunity to appear and evidence his demeanor, credibility and any other subjective manifestations of intent. The Committee is not limited to a review to determine whether the Registrar's decision is arbitrary and capricious or not supported by any substantial evidence.

Because the central issue of intent is subjective, the risk of an erroneous deprivation of plaintiffs' interests is incapable of objective qualification. I am convinced, however, that the four occasions for reclassification before several independent bodies, and the opportunities to present new evidence and to be heard, reasonably reduce the risk of an erroneous deprivation to a slight chance.

Plaintiffs assert that a statement of reasons would reduce the risk of an erroneous deprivation in three ways: first, an explanation of reasons would permit plaintiffs to make better presentations and thus diminish the risk of erroneous deprivation in subsequent semesters; second, a requirement that reasons be given would lead to a higher incidence of correct decisions by the very body giving the reasons; third, an explanation of reasons would provide a sounder basis for review of the Committee's decision.

Even if guiding future conduct is within the concerns of due process, intent remains the dispositive issue in a determination of residency. Informing a student that "A" and "B" are lacking, so that the student can

APPENDIX—Continued

proceed to do "A" and "B" may well leave his or her intent unaffected. Evidence of changed conduct in response to an earlier Committee statement of reasons would have an uncertain effect on the accuracy of Committee decisions in subsequent semesters.

█ Because there is no substantial factual dispute in plaintiffs' case, and in residency cases in general, the utility of findings of fact would be quite small in practice, in minimizing erroneous decisions by the Committee itself. *Michelson, supra,* 476 F.Supp. at 1322.

Legislative or judicial review of decisions is not an essential ingredient of the due process guaranteed by the fourteenth amendment. There is, for example, no federal constitutional right to state appellate review of state criminal convictions. *Griffin v. Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956), *rehearing denied,* 351 U.S. 958, 76 S.Ct. 844, 100 L.Ed. 1480 (1956); *Ross v. Moffitt,* 417 U.S. 600, 610–611, 94 S.Ct. 2437, 2443–2444, 41 L.Ed.2d 341 (1974). "Due process of law guarantees 'no particular form of procedure; it protects substantial rights.' *N.L.R.B. v. Mackay Radio & Tel. Co.,* 304 U.S. 333, 351 [58 S.Ct. 904, 913, 82 L.Ed. 1381]" (1938); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 610, 94 S.Ct. 1895, 1901, 40 L.Ed.2d 406 (1974). Even when, as here, legislative and judicial review of the Committee's decisions is provided, the subjective nature of the dispositive issue of intent means that the risk of erroneous decisions by these reviewing bodies is unlikely to be significantly reduced by a Committee statement of reasons.

█ In sum, the plaintiffs' property interest is relatively slight; the government's interest is significant; the governmental function is essential and traditionally immune from interference; to impose the requirement that reasons be given would be to impose significant administrative and fiscal burdens on the state; and the risk of erroneous decision under the procedures now used is reasonably minimized.

My conclusion that due process does not require that the Committee state reasons for a denial of resident status for tuition purposes is supported both by *Michelson v. Cox,* 476 F.Supp. 1315, holding that due process does not demand findings of fact for denial of resident tuition status, and *Linwood v. Board of Education, City of Peoria, School District Number 150, Illinois,* 463 F.2d 763 (7th Cir.1972), *cert. denied,* 409 U.S. 1027, 93 S.Ct. 475, 34 L.Ed.2d 320 (1972). Because Linwood was expelled from high school for gross disobedience and misconduct for allegedly attacking and striking other students, his interest is more significant than that of plaintiffs. Nevertheless, the Seventh Circuit held that due process did not require that the decision be made in the form of a written opinion incorporating findings of fact upon which the decision is based. *Id.,* at 770.

*Order*

Upon the basis of the entire record herein, it is ordered that:

(1) Plaintiffs' motion for summary judgment is denied; and

(2) Defendants' motion for summary judgment is granted, and this action is dismissed on its merits as to all claims by all plaintiffs against all defendants.

Entered this 25th day of February, 1982.

By The Court:

/s/  James E. Doyle
District Judge