935 F.2d 272
 UNPUBLISHED DISPOSITION
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
George Werner THIEL, Defendant-Appellant.
 No. 89-2875.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 30, 1990.
Decided June 14, 1991.
 
 Before WOOD, JR., COFFEY and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Defendant-appellant George Werner Thiel appeals his conviction on tax fraud charges alleging that he did not knowingly and intelligently waive his right to counsel, that the evidence was insufficient to convict and that the district court erred in admitting "other acts" evidence under Rule 404(b) of the Federal Rules of Evidence. We affirm.
 
 I. FACTS AND PROCEEDINGS BELOW
 
 2
 On July 27, 1988, a federal grand jury returned a 20 count indictment against George Werner Thiel alleging several violations of various federal tax laws: Count One charged the defendant with conspiring with Anthony Pacelli to defraud the Internal Revenue Service in violation of 18 U.S.C. Sec. 371;[1] Counts Two and Four charged the defendant with aiding and abetting Pacelli in Pacelli's evasion of his 1982 and 1984 individual income taxes in violation of 26 U.S.C. Sec. 7201 and 18 U.S.C. Sec. 2; Count Three of the indictment charged the defendant with aiding and abetting Pacelli in Pacelli's willful failure to file an income tax return for 1983 in violation of 26 U.S.C. Sec. 7203 and 18 U.S.C. Sec. 2; Counts Five, Six, and Seven of the indictment charged the defendant with aiding and abetting Pacelli in his willful failure to file corporate income tax returns for Pacelli Chiropractic Clinic, Inc. for the fiscal years 1983, 1984, and 1985; and Counts Eight through Twenty charged the defendant with aiding and abetting Pacelli in Pacelli's failure to file Employer's Quarterly Federal Tax Returns, Form 941, for his clinic for each of 13 calendar quarters ending September 30, 1982, through September 30, 1985, in violation of 26 U.S.C. Sec. 7203 and 18 U.S.C. Sec. 2. On June 26, 1989, the government filed a motion to dismiss Count Two of the indictment and a motion in limine for a pretrial order permitting "other acts" evidence under Federal Rules of Evidence 404(d). The trial court granted both motions.
 
 
 3
 On June 28, 1989, the defendant went to trial on the nineteen remaining counts. Pacelli, testifying on behalf of the government, stated that he stopped filing personal and corporate tax returns on the advice of the defendant in 1982 and continuing through 1985. Pacelli testified that he first met the defendant at a tax protest seminar in early 1980's. Pacelli related that the defendant was the main speaker and lectured on constitutional rights and taxation. It was at this meeting that the defendant advised Pacelli that Pacelli need not continue to file taxes. According to Pacelli's testimony, the defendant instructed Pacelli to keep all receipts for thirty days, and any "major receipts" were to be given to the defendant and Pacelli was to burn the "small receipts." Pacelli stated that pursuant to the defendant's advice, he followed this procedure for four years. It was Pacelli's understanding that the defendant kept the records for thirty days and then burned them. (Pacelli testified that the defendant's reason for burning the records was to make it more difficult for the IRS to trace his records.)[2]
 
 
 4
 Pacelli also testified that upon the defendant's advice, Pacelli changed the status of his employees to that of independent contractors and he instructed his employees to fill out papers after which he discontinued withholding any "employee" income and social security taxes. Pacelli further stated that the salaries, duties and work schedules remained the same after the status change. Pacelli also testified that the defendant advised Pacelli to place all his assets in a living trust so that the IRS could not seize them if it attempted to recover back taxes. Pacelli paid a fee of $1,800 for the defendant's efforts in setting up the trust. Pacelli testified that in 1985 he hired an attorney and began cooperating with the IRS to pay all his back taxes, penalties and interest.
 
 
 5
 The district court allowed the testimony of Serafin Andrade and Darrell Brewer pursuant to Rule 404(b) of the Federal Rules of Evidence. Andrade testified that he met the defendant in 1980 at a seminar at which time the defendant introduced himself to Andrade as a paralegal and a tax expert. Andrade testified that based on the defendant's advice he did not file his 1980 or 1981 taxes. Andrade testified that after he received several letters and visits from IRS agents, he reconsidered his situation. He stated that he hired a certified public accountant and began paying all his back taxes, penalties, and interest. During his involvement with the defendant, Andrade paid the defendant over $2,000 in cash for his services.
 
 
 6
 Darrell Brewer also testified on behalf of the government. Brewer stated that he subsequently met the defendant at a 1982 tax protest seminar and subsequently met with him three more times and at one such meeting the defendant informed Brewer that he was a paralegal and an expert in the tax protest movement. They discussed Exempt W-4 forms which Brewer had previously filed. (Brewer filed an Exempt W-4 whenever his employer withheld taxes.) Brewer testified that in 1982 the IRS assessed him a $3,500 penalty. Brewer went to the defendant for advice, and together they drafted a petition to the court and the defendant instructed Brewer regarding the testimony he was to give. Brewer stated that during the time of his involvement with the defendant Thiel, he paid him approximately $500 in cash for documents and advice.
 
 
 7
 At the beginning of the third day of trial, the defendant moved to dismiss his attorney and proceed pro se. The defendant stated that his attorney was "in over his head" and that he would greatly improve his chances by taking the case himself. The defendant told the court that he had appeared before many of the Seventh Circuit judges and that he had 18 years of experience in tax-related legal matters. The defendant expressed his belief that he had more than average knowledge of how the court works in such areas. The defendant refused the district court's advice and offer to have a standby counsel. Following this colloquy with the defendant, the district court granted the defendant's motion to dismiss his attorney and represent himself.
 
 
 8
 The defendant testified and admitted that he had not filed tax returns for the last 17 years, alleging that his income did not meet the requirements for filing during that period of time. He further admitted that his one goal was "to overhaul the IRS." The defendant testified that his involvement at various seminars and meetings related to his work for attorneys, and that he never told anyone at these events not to file tax returns. Finally, the defendant stated that he assisted Pacelli in opening a bank account, but did nothing to help him evade income taxes.
 
 
 9
 Jury verdicts of guilty as to all counts were returned on June 28, 1989. Judgment of conviction was entered on August 2, 1989, and the defendant was sentenced to concurrent terms of imprisonment of five years on Counts One and Four, and placed on probation for consecutive five year periods on the remaining counts. The defendant was also ordered to pay special assessment fees totalling $525.00.
 
 II. ISSUES FOR REVIEW
 
 10
 On appeal, the defendant contends that: (1) he did not knowingly, intelligently, and voluntarily waive his Sixth Amendment right to counsel; (2) the evidence was insufficient to sustain his conviction on Counts Eight through Twenty of the indictment; and (3) the district court erred in allowing evidence of "other acts" under Federal Rules of Evidence 404(b).
 
 III. DISCUSSION
 A. Waiver of Counsel
 
 11
 The defendant initially contends that he did not "knowingly, intelligently, and voluntarily waive his Sixth Amendment right to counsel." In support for of this argument, the defendant argues that he was not "expressly advised against self-representation" nor was he advised of "issues relating to self-incrimination, the admission of documentary evidence, the Rules of Evidence, and the Rules of Procedure."
 
 
 12
 We will not reverse a district court "where the record as a whole demonstrates that the defendant knowingly and intentionally waived his right to counsel." United States v. Bell, 901 F.2d 574, 577 (7th Cir.1990) (citation omitted). Apparently, the defendant would have the trial judge conduct a seminar in Criminal Procedure in order to ensure that a defendant's waiver of counsel is knowingly and intelligently made. However, "the trial judge need not give a hypothetical lecture on criminal law." United States v. Moya-Gomez, 860 F.2d 706, 732 (7th Cir.1988) (citations omitted). This court has made clear "that the ultimate question is not what was said or not said to the defendant but rather whether he in fact made a knowing and informed waiver of counsel." Moya-Gomez at 733.
 
 
 13
 Moya-Gomez sets forth several factors which should be considered in determining whether a defendant made a knowing and informed waiver of counsel: (1) whether the district court conducted a formal inquiry; (2) whether other evidence in the record establishes that the defendant in fact understood the dangers and disadvantages to self-representation; (3) the background and experience of the defendant; and (4) the context of the defendant's decision to proceed pro se. Id. at 733-36.
 
 
 14
 The first factor of the Moya-Gomez is satisfied because the record reveals that the district court conducted a formal inquiry to determine whether the defendant's decision to proceed pro se was knowingly and intelligently made:
 
 
 15
 "MR. ZABAN:(Attorney for the defendant) We are ready, your honor, except that the defendant would like to make a motion for him to be his own defense counsel and to dismiss me.
 
 
 16
 THE COURT: Alright. Mr. Thiel, is that your intention?
 
 
 17
 THE DEFENDANT: Yes, it is, your honor.
 
 
 18
 THE COURT: Why don't you for the record give us an explanation of this.
 
 
 19
 THE DEFENDANT: Well, your honor, I believe that Mr. Zaban has taken on a case where it has gotten in over his head. It is a very difficult case. It's one that I would understand far better than he would, with 18 years experience in it. I fully realize what I have got to do and how I've got to do it, and I believe my chances are much improved in this case if I take it over and do it myself.
 
 
 20
 THE COURT: Alright, you can be seated, Mr. Thiel. You do have the right to represent yourself, but your waiver of counsel must be knowingly and intelligently made, and I am interested in your understanding the consequences of your decision. You understand, first of all, that we are in mid-trial and I'll instruct the jury that they are not to use the fact that you are representing yourself in any manner against you. I will instruct them to that effect. On the other hand, you realize the difficulty that is inherent in examining yourself, if you decide to be a witness. I don't know if you are going to be a witness.
 
 
 21
 THE DEFENDANT: Yes, I will be.
 
 
 22
 THE COURT: You understand the inherent difficulty in that: you have to ask yourself a question and then answer it?
 
 
 23
 THE DEFENDANT: Yes.
 
 
 24
 THE COURT: You understand also there are certain guidelines that have been set forth for the trial of this case?
 
 
 25
 THE DEFENDANT: I just now got those.
 
 
 26
 THE COURT: I'd like to call your attention to those. You understand that, or you should understand that this court will operate this trial in accordance with what the Seventh Circuit Court of Appeals has told it, and there are certain defenses which have been used by individuals who have disagreed with the Internal Revenue Service that are no longer available for use as defenses in this circumstance.
 
 
 27
 THE DEFENDANT: Is the court aware that I was part of most of those defenses?
 
 
 28
 THE COURT: I am not sure what you mean.
 
 
 29
 THE DEFENDANT: I have appeared before practically all the judges in this circuit and those defenses are imminently familiar.
 
 
 30
 THE COURT: So those are not defenses now.
 
 
 31
 THE DEFENDANT: I am intimately aware of them.
 
 
 32
 THE COURT: So you have 18 years experience?
 
 
 33
 THE DEFENDANT: In and out, of course [sic].
 
 
 34
 THE COURT: You have been aware of the cases tried?
 
 
 35
 THE DEFENDANT: In and out of them.
 
 
 36
 THE COURT: So you think you have more than the average knowledge of how the court works in those areas?
 
 
 37
 THE DEFENDANT: Yes, your honor, I do.
 
 
 38
 "THE COURT: And you can appreciate, as we look at the court's ruling on the motion in limine that many of these defenses that have been tried are no longer defenses?
 
 
 39
 THE DEFENDANT: I understand.
 
 
 40
 THE COURT: And when I say that, that means those are not defenses today and I have already ordered that they not be attempted to be inflicted upon this jury.
 
 
 41
 THE DEFENDANT: And the court understands, of course, that my tax liability is not an issue and that is the only place I would bring up these defenses.
 
 
 42
 THE COURT: That is right, your tax liability is not an issue in this case. It's whether you aided or abetted these other--
 
 
 43
 THE DEFENDANT: That is all. And whether it is constitutional or not wouldn't even enter the picture.
 
 
 44
 THE COURT: I take it you have a defense strategy?
 
 
 45
 THE DEFENDANT: I have just now got all those files so I will have one in a little bit.
 
 
 46
 THE COURT: Well, I'm interested that you be prepared in this matter, and having seen 35 trials is different than one yourself.
 
 
 47
 THE DEFENDANT: I was up all night, your honor, walking the floor and--
 
 
 48
 THE COURT: So now you have decided?
 
 
 49
 THE DEFENDANT: I have irrevocably decided."
 
 
 50
 It is clear from the trial transcript that the district court's inquiry was sufficiently focused on whether the defendant's waiver of counsel was knowingly and intelligently made.
 
 
 51
 The trial judge also made the defendant aware of the pit-falls of self representation, the second factor of the Moya-Gomez test. To this end, the district court inquired as to whether the defendant wished to retain standby counsel:
 
 
 52
 THE COURT: Do you want Mr. Zaban to sit at counsel table at all?
 
 
 53
 THE DEFENDANT: No.
 
 
 54
 THE COURT: Do you want him to be on standby?
 
 
 55
 THE DEFENDANT: What would that involve?
 
 
 56
 THE COURT: Well, that would involve having him in the courtroom and, in case you run up a new legal issue you haven't considered, you could consult with him.
 
 
 57
 THE DEFENDANT: No.
 
 
 58
 THE COURT: You want him excused?
 
 
 59
 THE DEFENDANT: Yes, and may I also say, I don't want it to reflect unfavorably on Mr. Zaban. I believe he is a fine man. I don't believe he has got much experience in this type of case.
 
 
 60
 Second, the defendant himself acknowledged that this was "a very difficult case." Indeed, the defendant understood exactly what was required to conduct his defense: "I fully realize what I have got to do and how I've got to do it, and I believe my chances are much improved if I take it over and do it myself."
 
 
 61
 The third factor of Moya-Gomez, the background and experience of the defendant, also supports a finding that the defendant's waiver of counsel was knowingly and intelligently made. The defendant's background and experience in legal tax affairs is extensive. As a self-professed legal expert in taxation, the defendant spoke about taxes at numerous seminars in nine different states. Indeed at one such seminar, the defendant held a mock trial to show the audience what court proceedings were like. Moreover, the defendant was no stranger to the criminal justice system. The record reveals that the defendant had 18 years of experience as a paralegal assisting defense attorneys who represented individuals in tax cases. In addition, the defendant testified at trials on behalf of other tax protesters. Thus, it is clear that the defendant's background and experience made him as qualified as any pro se defendant in a similar situation could be.
 
 
 62
 The fourth and final factor of the Moya-Gomez is satisfied because the record shows that the context in which the waiver occurred was not one of confusion but rather one in which the defendant thought he could do a better job than his attorney. The defendant told the court that because he had "18 years of experience" in working with such cases, his prospects of a favorable outcome would be much improved if he took over the case himself. Furthermore, the record reveals that the defendant adequately represented himself: he questioned himself and other witnesses, he made appropriate objections to questions by government counsel, he objected to specific jury instructions, and he presented his case in final argument to reflect his defense (that being that he did not do anything illegal and at most he was an unknowing accomplice of Anthony Pacelli and various tax protest organizations).
 
 
 63
 Thus, our application of the Moya-Gomez factors to the case before us clearly demonstrates that the defendant's waiver of counsel was knowingly and intelligently made.
 
 B. Sufficiency of Evidence
 
 64
 The defendant next contends that the evidence was insufficient to sustain a conviction as to Counts Eight through Twenty of the indictment. Specifically, the defendant argues that there was insufficient evidence in the record to prove that the individuals who worked for Anthony Pacelli were "employees" rather than "independent contractors."[3]
 
 
 65
 Initially, we note that a defendant challenging the sufficiency of the evidence bears a heavy burden: in challenging the sufficiency of the evidence, "[t]he test is whether after viewing the evidence in the light most favorable to the government, any rational trier of fact would have found the essential elements of the crime beyond a reasonable doubt." United States v. Nesbitt, 852 F.2d 1502, 1509 (7th Cir.1988), cert. denied, 109 S.Ct. 808 (1989) (citations omitted). "Only when the record contains no evidence, regardless of how it is weighed, from which the [trier of fact] could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict." Nesbitt at 1509 (citations omitted).
 
 
 66
 Contrary to the defendant's claims, there is no doubt that sufficient evidence was presented at trial for a jury to find beyond a reasonable doubt that the people working for Pacelli were employees and not independent contractors. The very nature of Pacelli's chiropractic business suggested an employer-employee relationship: Pacelli's workers did primarily secretarial and insurance work, and Pacelli testified that he was in charge of determining the duties of his workers, including when they were supposed to report for work and the kinds of work they performed. Indeed, the evidence at trial showed that prior to and after his involvement with the defendant, Pacelli correctly filed employment tax forms for his workers. Thus, the defendant has failed to meet his heavy burden of showing on appeal that the evidence presented at trial was insufficient to convict him on Counts Eight through Twenty.
 
 C. Evidence Admitted Under 404(b)
 
 67
 The defendant's final argument is that the district court erred by admitting "other acts" evidence under Rule 404(b) of the Federal Rules of Evidence. The "other acts" evidence consisted of testimony by Serafin Andrade and Darrell Brewer. 404(b) provides that evidence of other crimes, wrongs or acts may be admissible to show "proof of motive, opportunity, intent, preparation, plans, knowledge, identity, or absence of mistake or accident."[4] The defendant admits that the testimony of these individuals may have had some bearing on the issues of "motive" or "plan", but claims that the government's purpose in offering the evidence was to establish the defendant's propensity to commit the crimes charged. The defendant contends that "[t]his case was one in which the sideshow of 'other act' evidence swallowed up the trial of the acts charged in the indictment."
 
 
 68
 In United States v. Zapata, 871 F.2d 616, 620, (7th Cir.1989), this court formulated a four-point test to determine the admissibility of evidence under 404(b):
 
 
 69
 "To determine if such evidence is admissible, the district court must engage in a four-pronged analysis and evaluate whether (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter and issue, (3) the evidence is sufficient to support a jury finding that the defendant committed a similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." (Citations omitted).
 
 
 70
 The first prong of the Zapata test is satisfied because the testimony and documents of Andrade and Brewer were offered to prove the defendant's intent and common scheme or plan, particularly as related to the conspiracy charge in the indictment, and not to show the defendant's propensity to commit the crime charged. The defendant was charged in Count One with conspiracy to defraud the United States by obstructing the lawful functions of the Internal Revenue Service. The overt acts charged in this count were that the defendant met Pacelli at a seminar that focused on income taxes, that Pacelli and the defendant discussed ways to thwart the Internal Revenue Service, that the defendant created a trust to insulate Pacelli from his potential creditors, and that the defendant counseled Pacelli to refrain from filing income tax returns. The testimony of Andrade and Brewer reveals that the defendant engaged in identical behavior with them. Both testified that they met the defendant at a seminar regarding the tax protest movement. Both testified that they met with the defendant several times to discuss ways to impede the Internal Revenue Service. Further, Brewer testified that the defendant discussed the formation of a trust to avoid taxes, similar to the one that he set upon behalf of Pacelli. Both testified that the defendant instructed them to cease filing income tax returns and based upon his advice, both of them did stop filing tax returns and paying taxes. Thus, it is clear that the testimony and documents of Andrade and Brewer were offered to prove the defendant's intent and common scheme or plan, particularly as it related to the conspiracy charge in the indictment, and were not offered to show the defendant's propensity to commit the crime charged.
 
 
 71
 The "other acts" evidence admitted under 404(b) also satisfies the second and third parts of the Zapata test. According to the testimony of Andrade and Brewer, the other acts occurred during the same time period as the charges in the indictment, the years 1980 through 1985. Also, as discussed in the previous paragraph, the other acts involving Andrade and Brewer were similar, often identical, to the acts charged in the indictment.
 
 
 72
 Finally, in applying the fourth prong of the Zapata test to the facts of the case before, we note that it is well settled that "the trial judge who saw and heard the evidence firsthand, can best balance probity and prejudice, and the reviewing court may reverse only upon a showing of abuse of discretion." United States v. Chaimson, 706 F.2d 798, 808 (7th Cir.1985). The trial judge, in balancing the probative value versus unfair prejudice, must be "accorded great deference because of his firsthand exposure to the evidence and his familiarity with the course of the trial proceeding." United States v. Liefer, 778 F.2d 1236, 1244 (7th Cir.1985) (citations omitted). There is no doubt that the testimony of Andrade and Brewer were highly probative of the matters at issue in this case. Indeed, any prejudicial effect of the evidence was minimized, as the jury was properly given a limiting instruction that the evidence was to be considered only in determining the defendant's intent, plan, and knowledge concerning the defendant's dealings with Pacelli. Thus, the district court acted properly within its discretion in admitting the testimony and documents of Andrade and Brewer pursuant to Federal Rules of Evidence 404(b).
 
 The decision of the district court is
 
 73
 AFFIRMED.
 
 
 
 [1]
 Anthony Pacelli is not a defendant in this case
 
 
 [2]
 At this meeting, Pacelli and the defendant also discussed the Mid-American Commodity & Barter Association ("MACBA"). This organization was a check clearinghouse system headquartered int eh defendant's home. For a fee, members could send checks to the MACBA and have them converted to cash or money orders. The purpose of these transactions was to make the checks difficult to trace. Pacelli subsequently joined the MACBA, and he sent checks to the organization either weekly or biweekly. Pacelli later used the Association of Concerned Americans, an organization identical to MACBA in its purpose and function
 
 
 [3]
 Counts Eight through Twenty of the indictment charged the defendant with aiding and abetting Pacelli in failing to file tax return Forms 9401 for Pacelli Chiropractic Clinic, Inc., for 13 quarters during the years 1982 through 1985. One of the elements of the crime in each of these counts was that Pacelli was required by law to file the returns in question; in order for Pacelli to be required to file the returns, the people working for him had to be considered "employees" as that term is defined in 26 C.E.R. 31.3121(d)-1(c)(1), 2
 
 
 [4]
 Rule 404(d) states:
 (d) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conforming therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.